IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORETTA BACA,

    Plaintiff,

v.                                                                                                        1:15-cv-00582-MCA-LF

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
ON MOTION TO REVERSE AND REMAND**

THIS MATTER comes before the Court on plaintiff Loretta Baca's Motion to Reverse and Remand (Doc. 21), which was fully briefed March 10, 2016. Pursuant to 28 U.S.C. § 636, the Honorable Chief District Judge M. Christina Armijo referred this matter to me for a recommended disposition. Doc. 15. Having carefully reviewed the parties' submissions and the administrative record, I recommend that the Court GRANT Ms. Baca's Motion to Reverse and Remand.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:

(1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Baca is 54 years old and resides with her husband. AR 215–16.[3] She is a college graduate, with prior work as a seventh-grade language arts teacher, and as a data collector for the Census Bureau and the United States Postal Service. AR 52–54, 512. Ms. Baca filed applications for disability insurance benefits and supplemental security income on October 3, 2012,[4] alleging disability since August 1, 2011 due to sleep apnea, irritable bowel syndrome, and post-traumatic stress disorder. AR 213–14, 215–25, 272. Ms. Baca later reported depression. AR 311. The Social Security Administration denied her claims initially and upon reconsideration. AR 152–54, 155–58, 159–61, 162–63. She requested a hearing before an administrative law judge ("ALJ"), and ALJ Frederick E. Upshall, Jr. held a hearing on May 2,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 18-1 through 18-25 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

[4] The protective filing date was September 5, 2012. AR 246.

2014.  AR 166–69, 40–87.  At the hearing, Ms. Baca testified that her primary care physician had recently diagnosed her with fibromyalgia.  AR 52.

The ALJ issued his unfavorable decision on December 23, 2014.  AR 17–33.  At step one, the ALJ found that Ms. Baca had not engaged in substantial, gainful activity since August 1, 2011.  AR 22.  Because Ms. Baca had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two.  *Id.*  At step two, the ALJ found that Ms. Baca suffered from the following severe impairments:  obstructive sleep apnea, irritable bowel syndrome, obesity, fibromyalgia, and depression.  *Id.*  At step three, the ALJ found that none of Ms. Baca's impairments, alone or in combination, met or medically equaled a Listing.  AR 22–25.  Because none of the impairments met a Listing, the ALJ assessed Ms. Baca's RFC.  AR 25–31.  The ALJ found that:

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she occasionally stoop [sic], crouch, crawl, kneel, and climb ramps and stairs with the use of a handrail; however, she can never climb ladders, ropes, or scaffolds.  She is capable of frequent gross manipulation (handling) and frequent fine manipulation (fingering) with her right upper extremity.  Her work is limited to simple, routine, and unskilled tasks; performed in a work environment free of fast paced production requirements; involving only simple, work-related decisions; and with few if any, work place changes.  Finally, she should never interact with the public.

AR 25–26.

At step four, the ALJ concluded that Ms. Baca was unable to perform any of her past relevant work.  AR 31.  The ALJ found Ms. Baca was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy, including the job of "warehouse checker," "marker-retail," and "mail clerk."  AR 32–33.

On June 13, 2015, the Appeals Council denied Ms. Baca's request for review.  AR 1–4.  Ms. Baca timely filed her appeal to this Court on July 7, 2015.  Doc. 1.

IV.     **Ms. Baca's Claims**

Ms. Baca raises three main arguments on appeal:  1) the ALJ's RFC is flawed because he failed to weigh the medical opinions properly, failed to perform specific analysis of the limitations caused by Ms. Baca's fibromyalgia, failed to do a proper function-by-function analysis, and failed to support his finding that Ms. Baca can perform frequent handling and fingering with substantial evidence; 2) the vocational expert ("VE") testimony was tainted by the RFC errors, and the ALJ failed to resolve conflicts between the VE testimony and the Dictionary of Occupational Titles; and 3) the ALJ's credibility determination was contrary to substantial evidence and based on inappropriate legal standards.  Because I agree that the ALJ committed several errors in formulating Ms. Baca's RFC, I recommend that the Court remand the case to the ALJ.  The Court need not reach Ms. Baca's other claims of error as they "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.     **Analysis**

Ms. Baca argues that the ALJ made errors in both the mental RFC and the physical RFC. Doc. 21 at 16.  Ms. Baca argues that the mental RFC is flawed because the ALJ failed to give legitimate reasons for giving Dr. Loescher's opinion "little weight." *Id.* at 16–19.  Ms. Baca argues that the physical RFC is flawed because the ALJ failed to properly analyze the limitations caused by her fibromyalgia, failed to do a proper function-by-function analysis, particularly of her ability to sit and stand, and failed to support his finding that she can perform "frequent" handling and fingering with substantial evidence.  *Id.* at 20–24.

**A. The ALJ failed to provide legitimate reasons for giving Dr. Loescher's opinion "little weight."**

Ms. Baca argues that the ALJ failed to give legitimate reasons for giving Dr. Loescher's opinion "little weight." Dr. Loescher—the agency's examining, consulting psychologist—examined Ms. Baca on November 21, 2012. AR 511. Dr. Loescher stated that Ms. Baca had difficulty with "tasks of attention and concentration," and that her "severe depression" would make her "severely impaired in her ability to function in a work setting." AR 513. The ALJ gave two reasons for giving Dr. Loescher's opinion "little weight"—it was "inconsistent with the medical evidence," and it was "based on a one-time examination." AR 30.

An ALJ must consider six factors in deciding what weight to give a medical source opinion:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 416.927(c)(1)–(6), 404.1527(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638

F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003)).  If rejecting a medical opinion, the ALJ must "provide specific, legitimate reasons for rejecting it."  *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted).  Giving an opinion "little weight" is the same as rejecting the opinion.  *Chapo v. Astrue,* 682 F.3d 1285, 1291 (10th Cir. 2012).

The ALJ failed to cite any support for his assertion that Dr. Loescher's opinion was "inconsistent."  The Commissioner argues that Dr. Loescher's opinion (stating that Ms. Baca was "severely impaired in her ability to function in a work setting") was inconsistent with the opinions of Dr. Logan and Dr. Woodson-Johnson, "who reviewed the record and opined that [Ms. Baca] was able to perform simple, repetitive work-related tasks in a routine work setting."  Doc. 25 at 10.  However, this reasoning does not appear in the ALJ's opinion, and this Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."  *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).  The entirety of the ALJ's discussion of the supposed inconsistency is as follows: "the opinion of Dr. Loescher is . . . inconsistent with the medical evidence, as evidenced by her lack of treatment form [sic] a mental health specialist."  AR 30.[5]  This is legal error.  In assessing a

---

[5] The ALJ does not explain how Ms. Baca's lack of treatment from a mental health specialist makes Dr. Loescher's opinion inconsistent.  Earlier in the opinion, however, the ALJ faulted Ms. Baca for failing "to maintain a consistent relationship with a mental health specialist or attend regular psychotherapy sessions," claiming that if Ms. Baca's "mental health conditions and resulting limitations were as severe as [she claimed], one would expect better treatment compliance and continuity."  AR 28.  Even if the amount of treatment Ms. Baca had received was relevant, there is nothing in the regulations requiring a claimant to seek treatment from a mental health specialist; general practitioners can render mental health treatment.  *See Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (unpublished).  The records show that Ms. Baca was receiving mental health treatment from her primary care doctors.  *See* AR 402, 405, 419–20, 426, 467–68, 493, 531–32, 564, 567, 570–73 (showing treatment for depression and PTSD, among other things, from 5/16/2011 through 2/27/2014).

mental impairment, "the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished); *see also Price v. Colvin,* 2014 WL 943101, at *5 (D. Kan. Mar. 11, 2014) (finding the ALJ erred in giving little weight to medical opinions based on the fact that claimant failed to get follow up treatment). While *Grotendorst* and *Price* both deal with the ALJs' evaluation of the severity of an impairment at step two, the Commissioner cites no cases showing the rules for analyzing the severity of an impairment are any different when an ALJ formulates the RFC. Thus, the ALJ failed to show that Dr. Loescher's opinion was inconsistent with the other medical evidence.

The second factor the ALJ cited for giving Dr. Loescher's opinion "little weight" was that it was "based on a one-time examination." AR 30. Ms. Baca concedes that this reason is "facially valid." Doc. 21 at 17. However, as she points out, an ALJ cannot reject the opinion of a consultative examiner solely because the opinion is based on a one-time exam. *Chapo*, 682 F.3d at 1291. Instead, an ALJ must evaluate "all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id*. (internal citation and quotation omitted). The only valid reason the ALJ gave for rejecting Dr. Loescher's opinion is that her opinion is based on a one-time exam; therefore, his rejection of the opinion is not supported by substantial evidence.[6]

### B. The ALJ failed to perform specific analysis of the limitations caused by Ms. Baca's fibromyalgia.

Ms. Baca argues that the ALJ failed to analyze the symptoms of her fibromyalgia in assessing her RFC. Doc. 21 at 20. For the reasons discussed below, I agree. I recommend that

---

[6] The Court does not address Ms. Baca's argument that the ALJ failed to include the moderate limitations found by the non-examining agency doctor, *see* Doc. 21 at 19–20, because this issue "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

the Court remand the case to the ALJ to allow him to analyze the impact of Ms. Baca's fibromyalgia symptoms on her RFC.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Under SSR 12-2p, the objective medical evidence required to prove a medically determinable impairment ("MDI") of fibromyalgia can be assessed using either the 1990 ACR Criteria for the Classification of Fibromyalgia[7] or the 2010 ACR Preliminary Diagnostic Criteria, which states that an ALJ may find a MDI of fibromyalgia if the claimant meets all three of the following criteria:

> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM [fibromyalgia] symptoms, signs,[8] or co-occurring conditions,[9] especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

---

[7] The 1990 ACR Criteria for Classification of Fibromyalgia state that the ALJ may find a claimant has an MDI of fibromyalgia if the claimant has all three of the following: (1) a history of widespread pain that has persisted for at least three months (the pain may fluctuate and not always be present); (2) At least 11 positive tender points on physical examination (found on all quadrants of the body); (3) Evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at *2–*3.

[8] Signs include: "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2p, n.9.

[9] Co-occurring conditions include irritable bowel syndrome, depression, "anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome." SSR 12-2p, n.10.

      3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

*Id.* at *2–*3. Fibromyalgia symptoms "wax and wane," and a person with fibromyalgia may have both "bad days and good days." *Id*. at *6.

      Fibromyalgia is not diagnosed through objective findings. *Gilbert v. Astrue*, 231 F. App'x. 778, 782–85 (10th Cir. 2007) (unpublished); *Moore v. Barnhart*, 114 F. App'x. 983, 990–91 (10th Cir. 2004) (unpublished). Instead, the disease "is diagnosed entirely on the basis of patients' reports and other symptoms." *Moore*, 114 F. App'x. at 991 (internal citation and quotation omitted). "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1213 (D. Kan. 2004) (internal citation and quotation omitted). Because the symptoms of fibromyalgia fluctuate, both consultative examiners and ALJs should consider a "longitudinal record" when assessing a claimant's RFC. SSR 12-2p, 2012 WL 3104869, at *5–*6.

      Here, the ALJ found that Ms. Baca had an MDI of fibromyalgia at step two, but failed to consider the effects of her fibromyalgia in determining her RFC. The ALJ found that the objective medical evidence did not support Ms. Baca's statements about the intensity, persistence and limiting effects of her symptoms in large part because she had "no abnormal tests of her cardiovascular, musculoskeletal, or nervous system," and because the "diagnostic evidence" of her condition was minimal. AR 27–28.

      The Commissioner argues that the ALJ did not "improperly reject [Ms. Baca's] diagnosis of fibromyalgia based on lack of objective findings." Doc. 25 at 12. The Commissioner argues that "although the existence or severity of fibromyalgia may not be determinable by objective medical tests, [the Tenth Circuit] has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Id.* (quoting *Tarpley v. Colvin*, 601 F.

App'x 641, 643 (10th Cir. 2015)). The Commissioner further asserts that the ALJ objectively examined Ms. Baca's symptoms and found they "were not as functionally limiting as she alleged." *Id.* at 13. However, the Commissioner points to no analysis of symptoms in the ALJ's opinion to support this argument. Instead, the Commissioner provides a post hoc argument that, like the ALJ's opinion, seems to require objective findings—stating that "the objective medical evidence of record did not reflect that [Ms. Baca's] fibromyalgia was as functionally limiting as she alleged, as her gait, motor strength, range of motion, and sensation were all regularly normal upon examination." Doc. 25 at 13.[10] The ALJ's focus on the lack of objective medical tests rather than on Ms. Baca's symptoms and limitations is legal error, given that the Tenth Circuit has recognized that fibromyalgia is not diagnosed through objective findings. *Gilbert*, 231 F. App'x. at 783–85; *Moore,* 114 F. App'x. at 990–91.

Ms. Baca had multiple symptoms consistent with her diagnosis of fibromyalgia—including widespread pain which waxed and waned, fatigue, cognitive or memory problems, waking un-refreshed, depression, and irritable bowel syndrome. Doc. 21 at 20; *see also* Doc. 21 at 5–15 (summary of medical records). However, there is no substantive discussion of these symptoms in the ALJ's opinion. Rather than looking at a "longitudinal record" of Ms. Baca's symptoms, the ALJ instead focused almost exclusively on the lack of objective medical findings. The ALJ noted that Ms. Baca's x-rays were normal, unremarkable, or showed only "mild degenerative changes;" that a CT scan showed only uncomplicated diverticular disease; that she had only "alleged pain" for which an ER physician had "no specific diagnosis;" and that she had

---

[10] In demanding objective tests, the ALJ and the Commissioner appear to share the same fundamental misunderstanding of fibromyalgia. "Patients with FMS [(fibromyalgia) syndrome] usually look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness." *Moore*, 114 F. App'x at 991–92.

"no tenderness, edema, and a full range of motion." AR 27. The ALJ went on to say that "[m]ore telling, the file contains no abnormal tests of her cardiovascular, musculoskeletal, or nervous system," and that that "the diagnostic evidence of said condition is minimal." AR 28. The ALJ concluded his summary of the objective medical tests by stating that there was "no significant credible evidence" to support a more limited RFC, AR 28, and went on to discredit Ms. Baca's reported limitations in activities of daily living due to the "relatively weak medical evidence," AR 29. In focusing almost exclusively on the objective medical tests, the ALJ failed to adequately discuss Ms. Baca's fibromyalgia symptoms in formulating the RFC.

Finally, none of the medical opinions the ALJ used to support his RFC findings considered Ms. Baca's diagnosis of fibromyalgia. Ms. Baca's primary care physician, Dr. Jeansonne, first unequivocally diagnosed Ms. Baca with fibromyalgia on April 23, 2013. AR 576.[11] The Social Security Administration did not receive the set of medical records containing this diagnosis until after Ms. Baca's request for reconsideration was denied. *See* AR 159, 162 (showing last reviewed records from First Choice Community Healthcare were received April 20, 2013). Because none of the medical opinions on which the ALJ relied considered Ms. Baca's diagnosis of fibromyalgia, the ALJ's RFC is not supported by substantial evidence.

Dr. Jobe, the agency's consultative examiner, examined Ms. Baca on December 8, 2012—long before she was diagnosed with fibromyalgia. AR 519. Dr. Jobe did not know why Ms. Baca would be tired in the mornings. AR 521. The ALJ gave Dr. Jobe's opinion "partial weight." AR 30. The ALJ gave "little weight" to the opinions of State agency medical

---

[11] Ms. Baca states in her motion that Dr. Jeansonne diagnosed her with fibromyalgia on March 26, 2013. Doc. 21 at 8. While Dr. Jeansonne's record for this date states the "reason for [the] visit" on this date was fibromyalgia follow up, the assessment portion of the record indicates a diagnosis of "pain/polymyalgias," rather than fibromyalgia. AR 526. Dr. Jeansonne first listed fibromyalgia as a diagnosis on April 23, 2013. AR 576.

consultants Leah Holly, D.O. and Stephen Whaley, M.D—finding that Ms. Baca had greater limitations than they opined, based upon "updated evidence" and Ms. Baca's pain complaints. AR 29–30.  However, the ALJ did not discuss any of the "updated evidence" or Ms. Baca's pain complaints in his opinion.  Neither Dr. Jobe nor the agency medical consultants assessed Ms. Baca's limitations *after* her diagnosis of fibromyalgia.  Dr. Holly, who completed her assessment on December 29, 2012—well before Ms. Baca was diagnosed with fibromyalgia—stated that Ms. Baca's multiple diagnoses, which had not yet been substantiated by the evidence, were "pertinent negatives."  AR 93.  Dr. Whaley issued his opinion on May 7, 2013, as part of Ms. Baca's request for reconsideration.  AR 122–23.  This was a few months after Dr. Jeansonne began to suspect Ms. Baca might have fibromyalgia.  *See* AR 527 (Dr. Jeansonne's February 25, 2013 assessment note stating that "other than time criteria, [Ms. Baca's condition was] very suggestive of fibromyalgia"); AR 526 (Dr. Jeansonne's March 26, 2013 progress report diagnosing Ms. Baca as having "pain/polymyalgias").  Dr. Whaley at least appears to have reviewed Dr. Jeansonne's treatment record from March 26, 2013.  *See* AR 118, 133.  However, Dr. Whaley did not consider any records with a diagnosis of fibromyalgia; neither was fibromyalgia listed as an MDI for Ms. Baca at the time her request for reconsideration was denied.  AR 123, 139 (listing only two medically determinable impairments for Ms. Baca—a gastrointestinal disorder and an "affective disorder").

      The ALJ failed to discuss Ms. Baca's fibromyalgia symptoms, and none of the medical opinions the ALJ used to support the RFC adequately considered Ms. Baca's fibromyalgia, or the effects that this MDI had on her RFC.  Therefore, the ALJ's physical RFC is not supported by substantial evidence.

### C. The ALJ failed to do a thorough function-by-function analysis, resulting in a flawed RFC.

Ms. Baca argues that the ALJ failed to provide a function-by-function analysis, and in particular failed to analyze her ability to stand and walk. Doc. 21 at 21–22. For the reasons discussed below, I agree. I recommend that the Court remand to allow the ALJ to conduct a proper function-by-function analysis.

Step Four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Id.* (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. *Id.* at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and

assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p at *3–4).

Light work requires six hours of walking or standing daily. SSR 83-10, 1983 WL 31251, at *5–6.; 20 C.F.R. § 404.1567(b). The ALJ failed to discuss or make any RFC finding about Ms. Baca's ability to stand and walk. This is error requiring remand. *See Southard,* 72 F. App'x 781.

The Commissioner argues that the ALJ need only "consider" a claimant's work-related abilities on a function-by-function basis, but that he need not explicitly discuss his function-by-function analysis. Doc 25 at 15. The Commissioner argues that the ALJ adequately "considered" Ms. Baca's limitations, citing *Hendron v. Colvin* in support of this argument. Doc.

15

25 at 15.[12]  However, *Hendron* is distinguishable.  In *Hendron*, the Court held that the ALJ did not err by finding that Ms. Hendron could perform a "full range of sedentary work" without an "explicit function-by-function analysis."  *Hendron v. Colvin,* 767 F.3d 951, 956 (10th Cir. 2014).  But the reason the court in *Hendron* did not require an explicit function-by-function analysis was because there was no evidence supporting a limitation on Ms. Hendron's ability to sit during the relevant two-month time period; therefore the analysis was not critical to the outcome of the case.  *See id.* at 956–57.  Unlike *Hendron*, however, here the relevant time period spans several years, and an explicit function-by-function analysis is critical to the outcome of the case.  Therefore, the ALJ's failure to perform a function-by-function analysis with regard to Ms. Baca's ability to sit and stand is legal error.

      There is evidence in the record that Ms. Baca's ability to stand affects her work-related activities.  Ms. Baca testified at the ALJ hearing that she could stand for a maximum of 15 minutes before she had to sit down.  AR 64.  She testified that standing for longer than 15 minutes caused her knee and hip pain to flare up, and that she had to sit or lie down to alleviate the pain.  *Id.*  She further testified that she could walk only half a block.  *Id.*  The ALJ noted that Dr. Jobe, the agency's consultative examiner, "opined that [Ms. Baca] was limited to standing for ten minutes at one time and one-hour total . . . in a normal 8-hour workday."  AR 30.  The ALJ dismissed the limitations noted by Dr. Jobe by claiming that they were "inconsistent with the medical evidence and his own one-time examination."  AR 30.  However, the ALJ cites no evidence showing these limitations were inconsistent with the medical evidence or with Dr. Jobe's own examination.  The ALJ is required to "give good reasons, tied to the factors specified

---

[12] The Commissioner also cites an unpublished, out-of-circuit case—*Knox v. Astrue*, 327 F. App'x 652, 657–58 (7th Cir. 2009) (unpublished).  Because *Hendron* controls, this case is inapposite.

in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (internal citation omitted).  It is insufficient for the ALJ to state that an opinion is inconsistent "in conclusory fashion, without reference to those portions of the record with which [the doctor's] opinion was allegedly inconsistent." *Id.* at 1331.  While "[i]t may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, . . . that is best left for the ALJ himself to do in the proceedings on remand." *Id.*

### D. The ALJ failed support his RFC finding that Ms. Baca can perform "frequent" handling and fingering with substantial evidence.

Ms. Baca argues that the ALJ failed to cite any evidence that supports his finding that Ms. Baca can perform frequent handling and fingering with her upper right extremity.  Doc. 21 at 21.  The Commissioner argues that Ms. Baca fails to point to any evidence showing a greater limitation in her ability to handle and finger with her upper right extremity.  Doc. 25 at 13.  Because I agree that the ALJ failed to support his RFC finding with substantial evidence, I recommend that the Court remand on this basis as well.

Ms. Baca testified at the ALJ hearing that she had trouble with her right hand, and that she sometimes had trouble picking up small objects.  AR 67.  In addition, the medical records in this case document that Ms. Baca had limitations in her ability to use her hands and arms.  On September 6, 2012, Ms. Baca complained to her primary care physician that she had a "heat sensation" in her right hand.  AR 493.  On February 7, 2013, Ms. Baca saw her primary care physician for left arm pain.  AR 528.  On March 26, 2013, Ms. Baca reported pain in her right arm.  AR 526.  On February 27, 2014, Ms. Baca saw her primary care physician for "neck and right arm pain."  AR 564.  In addition, records show that Ms. Baca repeatedly reported neck, shoulder, and arm pain to her medical providers.  *See* AR 364–67 (pain in neck and right arm);

17

AR 309 (reporting numbness and loss of strength in right hand); AR 450 (reporting pain in right shoulder and elbows); AR 527 (reporting pain in upper extremities); AR 567 (reporting shoulder and neck pain); AR 568 (reporting neck pain).

The ALJ must provide reasoning for his decision so that judicial review is both possible and meaningful. *Clifton v. Chater*, 79 F. 3d 1007, 1009 (10th Cir. 1996). The ALJ's failure to cite any evidence supporting his RFC finding that Ms. Baca can perform "frequent" handling and fingering with her upper right extremity leaves this Court without a "sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165. The ALJ's failure to support his finding with substantial evidence requires remand on this issue as well.

## VI.   Conclusion

The ALJ failed to properly weigh the medical opinion of Dr. Loescher, failed to adequately consider Ms. Baca's fibromyalgia symptoms in assessing her RFC, failed to perform a thorough function-by-function analysis, and failed to support his RFC finding that Ms. Baca can perform "frequent" handling and fingering with substantial evidence. For these reasons, I recommend that the Court GRANT Ms. Baca's Motion to Reverse and Remand (Doc. 21) so that the Commissioner may revisit Ms. Baca's RFC and how it impacts her claim of disability. I recommend that the Court decline to address Ms. Baca's other claims of error as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge